**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
PAMELA WALKER,

                              Plaintiff,                          <u>**OPINION AND ORDER**</u>

               -against-                             05-CV-1283 (RER)

CITY OF NEW YORK, et al.,

                              Defendants.
-----------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

       Plaintiff Pamela Walker ("Walker") brought this action against the City of New York

("City"), Police Department City of New York ("NYPD"), New York City Police Pension Fund

("Fund"), Police Commissioner Raymond Kelly ("Kelly"), Deputy Inspector Timothy Donovan

("Donovan"), Captain John Wallace ("Wallace"), Lieutenant John Dietz ("Dietz"), and Edward

J. Allocco ("Allocco"),[1] as the Commissioner of the Board of Trustees of the New York City

Police Pension Fund (the "Board") (collectively, "Defendants").[2]  Walker contends that

Defendants discriminated against her based on her race, gender, and disability in violation of the

Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983") and various state laws.  Walker's

claims arise from an accidental shooting in which she injured her right hand, and the resulting

denial of her application for accident disability retirement ("ADR") from the NYPD.

---

     [1]  The Complaint lists Edward Allocca; however, the proper spelling appears to be
Allocco. (Defendants' Memorandum in Support of Summary Judgment at 5 n.5.)

     [2]  Plaintiff named seven additional NYPD administrators and supervisors as defendants in
her complaint, but she has since agreed to withdraw all claims against those individuals with
prejudice.  (Docket No. 43.)

Before the Court is Defendants' motion for summary judgment.[3]  For the reasons detailed herein, Defendants' motion for summary judgment is granted in part and denied in part.

**BACKGROUND**

I. <u>Facts</u>

Walker, an African-American woman, served as a New York City Police Officer from January 23, 1988 until her retirement in the summer of 2004.  (Defendants' Local Rule 56.1 Statement of Undisputed Facts ("Def. 56.1 Stmnt"), dated Jan. 20, 2010, ¶ 1; Affidavit of Plaintiff Pamela Walker ("Walker Aff."), dated March 12, 2010, ¶ 1.)[4]  On August 6, 2002, Walker was shot and permanently injured her in right hand during a weapon inspection at the Midtown Precinct South Station.  (Def. 56.1 Stmnt ¶ 1; Walker Aff. ¶¶ 7, 49.)

According to Walker, her injury was not self-inflicted, but was caused by Dietz, her Caucasian male supervisor.  (Walker Aff. ¶¶ 46-49.)  Walker contends that on the day in question Dietz ordered her to the "Planning Room," a civilian office without a firearm safety station, for her annual uniform inspection, which included inspection of her NYPD-issued firearms.  (Walker Aff. ¶ 10.)  At Dietz's request, Walker placed all three of her holstered weapons on the desk in front of Dietz despite thinking that the order was "highly unusual and inconsistent with Department policy" since the firearms were "'loaded' for the street with 'live ammunition.'"

---

[3]  The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

[4]  In their Statement of Undisputed Facts, Defendants list Walker's date of retirement as on or about June 9, 2004 (Def. 56.1 Stmnt ¶ 1), but in her Affidavit, Plaintiff asserts that her employment with NYPD ended as of July 28, 004, (Walker Aff. ¶ 1.)  For purposes of this motion, however, it is of no consequence what  was the exact date of separation.

(Walker Aff. ¶¶ 11-12.) Walker asked Dietz if she should "Draw and Present"[5] her weapon for inspection, but Dietz told her it was not necessary. (Walker Aff. ¶ 21.) Dietz inspected the weapon, and as he was handing it back to her, "accidentally depressed the trigger causing the 'loaded' firearm to discharge." (Walker Aff. ¶¶ 46-49.) The bullet passed through Walker's right, dominant hand. (Walker Aff. ¶¶ 49, 53; Def. 56.1 Stmnt ¶ 1.) Walker also contends that Dietz then ran out of the room without rendering aid. (Walker ¶¶ 49-50.)

Wallace, who was Walker's captain at the time, issued a report on February 3, 2003, which found that the injury was self-inflicted. (Declaration of Susan Penny Bernstein in Opposition to Summary Judgment ("Bernstein Decl."), dated March 12, 2010, Exh. 4.) Wallace's report indicates that both Dietz and Walker were interviewed regarding the incident. (Bernstein Decl., Exh. 4.) He reports that Walker said she handled the weapon the entire time before discharge, (Bernstein Decl., Exh. 4 at 3), a statement Walker says she never made, (Walker Aff. ¶¶ 77-78.) Contrary to Wallace's conclusions, in a sworn affidavit, Alfred Medina, retired NYPD Sergeant and active firearms instructor, explained that Walker "could not have accidentally shot her own dominant hand" when unholstering the weapon based on the way police officers are trained to draw a weapon from its holster.[6] (Affidavit of Alfred Medina ("Medina Aff."), dated April 9, 2006, at 3.)

_____

[5] Drawing and Presenting is a formal process of transferring a presumably loaded and unsafe firearm to another person, where the weapon is removed from the holster and the cylinder opened making the firearm safe for transfer. (Walker Aff. ¶¶ 24-28.)

[6] This is an opinion also expressed by Trustee Joseph Alejandro at the vote of Trustees to determine whether Walker was entitled to ADR. (Bernstein Decl., Exh. 23 at 10, 16.)

On September 26, 2003, Walker applied for ADR based upon her injury. (Walker Aff. ¶ 84; Def. 56.1 Stmnt ¶ 2.) The Medical Board of the Fund ("Medical Board") reviewed Walker's medical records, examined and interviewed her, and eventually concluded that she was disabled from full duty as a police officer as a result of the August 6 incident. (Def. 56.1 Stmnt ¶ 2.) Accordingly, the Medical Board recommended that Walker's application for ADR benefits be granted. (Def. 56.1 Stmnt ¶ 2.)

Despite the Medical Board's recommendation, the Board ultimately denied Walker's ADR application. (Def. 56.1 Stmnt ¶ 3; Bernstein Decl., Exh. 23.) That decision was apparently predicated on Wallace's report, which found that the "discharge occurred as a direct result of [Walker's] inability to maintain control of the weapon." (Def. 56.1 Stmnt ¶ 3; Bernstein Decl., Exh. 23 at 16 (quoting Wallace's report).) Because of a tie vote (6/6), Walker was instead granted ordinary disability retirement ("ODR").[7] (Def. 56.1 Stmnt ¶ 3.)

---

[7] A police officer qualifies for ADR if she is: "physically or mentally incapacitated for the performance of city-service, as a natural and proximate result of such city-service, and . . . that such alleged disability was not the result of wilful negligence on the part of such member." N.Y.C. CODE 13-252. A member entitled to ADR receives a pension of 3/4 her final average salary. *Id.* § 13-258. A police officer qualifies for ODR if she is "physically or mentally incapacitated for the performance of duty and ought to be retired." *Id.* § 13-251. A member entitled to ODR, by contrast, only receives a fraction (one-fortieth or one-fiftieth) of her income multiplied by years of service or one-half of her income at the time of retirement, whichever is greater. *See id.* § 13-257(3). Thus, a member retired under ODR generally receives less than that which she would under ADR. In the event that the Board is unable to agree on which retirement to award, the Board's apparent "time-honored" practice is to deny ADR and award ODR. *Meyer v. Board of Trustees of the New York City Fire Dept.*, 90 N.Y.2d 139, 144-45 (N.Y. 1997); *Canfora v. Board of Trustees of Police Pension Fund of Police Dept.*, 60 N.Y.2d 347, 351-52 (N.Y. 1983). A New York Court reviewing the decision in an Article 78 proceeding may only set the denial of ADR aside if it can be determined as a matter of law that the service member was entitled to ADR. *Meyer*, 90 N.Y.2d at 145; *Canfora*, 60 N.Y.2d at 352.

## II.     **Procedural History**

Walker filed this action on March 9, 2005.  In her Complaint, Walker asserts thirteen

separate "Counts," many of which contain multiple causes of action under federal and state law.[8]

Through two separate stipulations, Walker has withdrawn all but two of her federal claims.  (*See*

Docket Nos. 28 and 43.)  Plaintiff and Defendants agree that the only remaining federal claims

are contained in Counts III and IV.  (Docket No. 43.)[9]

Although the parties agree that Counts III and IV remain for adjudication, it is not clear to

the Court precisely what those Counts specifically allege, or at least what the parties contend they

specifically allege.  Perhaps this is due to the fact that (1) the Complaint and stipulations

withdrawing some of the claims are confusingly drafted; and/or (2) Counts III and IV each appear

to contain multiple causes of action which are improperly denominated; and/or (3) the parties'

summary judgment briefs refer to claims that appear to have been withdrawn.  For example,

Count III is entitled "Race, Color, Gender and Disability Discrimination in Violation of The Civil

Rights Act of 1871, 42 U.S.C. § 1983 Conspiracy."  By stipulation, Walker withdrew her

---

[8]  For example, Count I, entitled "Race, Color and Gender Discrimination in Violation of Title VII of the Civil Rights Act . . .," asserts separate causes of action for discrimination (race, color and gender (¶¶ 40-43)), and retaliation (¶ 44).  Walker also asserted claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(b)(5)(A) (Count II); the Civil Rights Act of 1871, 42 U.S.C. § 1985 (Counts V and VI); New York Executive Law § 296 (race, color and gender discrimination (Count VII)), retaliation (Count VIII), and disability discrimination (Count IX); New York City Administrative Code §§ 8-107 and 8-502 (race, color and gender discrimination (Count X)), retaliation (Count XI), and disability discrimination (Count XII); and common law intentional infliction of emotional distress and intentional interference with contract (Count XIII).

[9]  The parties are silent, however, as to whether Walker's state law claims will remain (Counts VII-XII) after adjudication of the instant motion.

constitutional conspiracy claims, specifically stated as: "Counts III through VI of the Complaint,

which allege conspiracy under 42 U.S.C. § 1985." (Docket No. 43 ¶ 1.) The stipulation later

clarifies "that by withdrawing Counts III, IV, V and VI which allege Conspiracy, as well as

claims under the Due Process Clause, she will continue to assert the following claims only: race,

gender and disability discrimination under 42 U.S.C. § 1983." (Docket No. 43 ¶ 5.) Despite this,

however, the parties devote substantial portions of the memoranda of law arguing the validity of

Walker's constitutional conspiracy claims. (Defendants' Memorandum of Law in Support of

their Motion for Summary Judgment ("Def. Mem."), dated Jan. 20, 2010, at 5-6; Plaintiff's

Memorandum in Opposition of Defendants' Motion for Partial Summary Judgment ("Pl.

Mem."), dated March 12, 2010, at 11-18.)

    Nevertheless, after carefully parsing through the Complaint, the stipulations, and the

parties' memoranda of law, it appears that the only claims that remain for adjudication are

whether Walker was subjected to race, gender or disability discrimination in violation of 42

U.S.C. § 1983. (Docket No. 43, ¶ 5 ("Plaintiff agrees that by withdrawing Counts III, IV, V and

VI which allege Conspiracy, as well as claims under the Due Process Clause, she will continue to

assert the following claims only: race, gender and disability discrimination under 42 U.S.C. §

1983.")). Factually, Walker's claims boil down to: (1) whether Defendants Kelly, Donovan,

Wallace and Dietz deprived her of a thorough, true and accurate investigation into her shooting

based on her race, gender, or disability (Count III); and (2) whether Allocco (as Commissioner of

the Board) treated her differently than other similarly situated officers who applied for ADR based on her race, gender, or disability (Count IV).[10]

## DISCUSSION

I. **Legal Standards**

A. **Summary Judgment**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[11]  A genuine dispute as to a material fact is a dispute which "could reasonably be resolved in favor of either party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), and which must be resolved to apply the relevant substantive law, *id.* at 248.  The moving party has the burden of establishing "the absence of a genuine" dispute.  *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986).  Moreover, all facts and inferences should be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Here, although in her opposition papers Walker raises what she considers to be many disputed factual issues, for

---

[10]  In her opposition papers, Plaintiff voluntarily withdrew any claims she may have had against the City based on allegations of a discriminatory policy or practice.  (Docket No. 1, ¶ 1; Pl. Mem. at 26.)  Accordingly, that claim will not be addressed herein.

[11]  On December 1, 2010, changes to Rule 56 of the Federal Rules of Civil Procedure went into effect.  Although some of the language has changed, (*i.e.*, "genuine *dispute as to* a material fact" from the former "genuine *issue of* material fact"), the standard for summary judgment remains the same.  FED. R. CIV. P. 56 advisory committee's note (2010 Amendments). The amendments are not to "affect continuing development of the decisional law construing and applying these phrases."  *Id.*

the purposes of this motion Defendants assume that all of Plaintiff's factual allegations in the Complaint are true. (Def. Mem. at 3, n.3.) Therefore, the Court need not resolve the factual disputes asserted by Walker.

### B. Section 1983 Standards

Section 1983 requires a plaintiff to show that the defendant, under color of state law, deprived the plaintiff of, or caused the plaintiff to be deprived of, rights guaranteed by the Constitution and federal law. 42 U.S.C. § 1983. "The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Abreu v. City of New York*, No. 04-CV-1721, 2006 WL 401651, at *4 (E.D.N.Y. Feb. 22, 2006) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)). A plaintiff must establish the personal involvement of each defendant in the alleged constitutional deprivation. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009); *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001).


## II. Count III is Dismissed

Defendants assert that Plaintiff's Section 1983 claim predicated on the deprivation of her right to a "fair and adequate" investigation must be dismissed because there is no such cognizable federal right. (Def. Mem. at 5.) In response, Plaintiff argues that her claim is in fact an equal protection claim based on discriminatory failure to investigate. (Pl. Mem. at 6-7.) Defendants counter that (1) Walker cannot make this argument as she did not plead "selective denial of equal protection" in the Complaint, and (2) even if she did, there is no evidence of

differential treatment.  (Defendants' Reply Memorandum of Law in Support of Summary

Judgment ("Def. Reply"), dated March 24, 2010, at 2-3.)

### A.    No Proof of Personal Involvement of Kelly and Dietz

At the outset, the claims against Kelly and Dietz related to the alleged discriminatory

investigation must be dismissed because there is no allegation, let alone admissible evidence to

prove, that they were personally involved in the investigation.[12]

Under Section 1983, liability can only be imposed against defendants for "personal

involvement . . . in alleged constitutional deprivations." *Back v. Hastings on Hudson Union Free*

*Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (internal quotation marks omitted). "[D]irect

participation is not always necessary" to establish liability.  *Al- Jundi v. Estate of Rockefeller*,

885 F.2d 1060, 1066 (2d Cir.1989).  "[A] supervisory official may be personally liable if he or

she has actual or constructive notice of unconstitutional practices and demonstrates gross

negligence or deliberate indifference by failing to act." *Id.* (internal quotation marks omitted);

*see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[S]upervisory liability may be

imposed where an official demonstrates gross negligence or deliberate indifference to . . .

constitutional rights . . . by failing to act on information indicating that unconstitutional practices

are taking place." (internal quotation marks omitted)).

Although Walker names Commissioner Kelly as a defendant, there is no allegation in the

Complaint or proof in Walker's summary judgment submissions that he was personally involved

---

[12] And, in any event as discussed *infra*, Walker cannot establish a discriminatory failure
to investigate to establish an equal protection violation, so her Section 1983 claims against Kelly
and Dietz would fail regardless.

in the deprivation of Plaintiff's constitutional rights, or that he had actual or constructive knowledge of the allegedly unconstitutional acts and failed to remedy them. Thus, and although Defendants have not argued as such, Commissioner Kelly is not a proper party to this action and the claim against him is dismissed. *See Biosafe-One, Inc. v. Hawks*, 379 Fed. Appx. 4, 8-9 (2d Cir. 2010) ("'District courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*.'") (quoting *First Financial Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114 (2d Cir.1999)).

Similarly, there is no allegation in the Complaint, or proof in Walker's summary judgment submissions that Dietz was personally involved in the alleged unconstitutional acts. Even assuming that Walker's version of events is true, that Dietz shot her and lied about who had possession of the gun when it went off, Dietz's involvement in the investigation starts and ends as a witness to the incident. A witness, even one who happens to be a member of the NYPD, does not direct the investigation or have any control over the way an investigation is handled. Nor does Walker allege or argue that Dietz had such involvement in the investigation. (Pl. Mem. at 7-8, 12-15 (listing the alleged investigative shortcomings all of which are attributable only to Donovan and Wallace).) Dietz, acting as a witness in the investigation, was not personally involved in any alleged unconstitutional act and is also not a proper party to this action. The claim against him is therefore dismissed. *See Biosafe-One, Inc.*, 379 Fed. Appx. at 8-9.

### B. No Proof of Discriminatory Investigation

In *Deshaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989), the Supreme Court held that the Due Process clause does not confer any affirmative right to

government aid. *Id.* at 196-97. Accordingly, Defendants correctly note that there is no independent constitutional or federal right to a fair and adequate investigation. *Stone v. Department of Investigation of New York*, No. 91-CV- 2471, 1992 WL 25202 (S.D.N.Y. Feb. 4, 1992) (citing *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985); *Chapman v. Musich*, 726 F.2d 405 (8th Cir. 1984)).[13] Nevertheless, it is well-settled that the government may not selectively deny its protective services to disfavored minorities without violating the Equal Protection clause. *Deshaney*, 489 U.S. at 197 n.3 (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)). Thus, a Section 1983/equal protection claim may exist where government officials fail to conduct a proper investigation with discriminatory intent. *E.g.*, *Blount v. Swiderski*, No. 03-CV-0023, 2006 WL 3314635 (E.D.N.Y. Nov. 14, 2006).

In *Blount*, which I find to be persuasive, the court found cognizable a Section 1983/equal protection claim where the plaintiff "claim[ed] more than a mere failure to investigate. She allege[ed] that the defendants violated her equal protection rights by purposely failing, because of constitutionally improper motives, to investigate her complaint as they would investigate other complaints." *Blount*, 2006 WL 3314635, at *12.[14] Walker's claims are similar in that she alleges Defendants failed to properly investigate her shooting incident because of improper motives—her race, gender or disability. Thus, as in *Blount*, Walker's allegations are

_____

[13] Oddly, Defendants cite *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995) and *Baker v. McCollan*, 443 U.S. 137, 146 (1979) as support for this proposition. These cases are inapposite as they specifically address the right to an investigation prior to arrest in the context of probable cause findings.

[14] The *Blount* court ultimately concluded that the plaintiff did not put forth sufficient evidence to defeat summary judgment on her Section 1983/equal protection claim.

distinguishable from a free-standing claim of inadequate investigation, which is impermissible under the law. *Deshaney*, 489 U.S. at 196-97.

Defendants are also incorrect that Walker did not properly plead a "selective denial of equal protection" claim (*i.e.*, discriminatory failure to conduct a proper investigation) in her Complaint. (Def. Reply at 3 (citing *Old Monmouth Stock Transfer Co. V. Depository Trust and Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007); *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999).) To sufficiently plead an equal protection violation, Plaintiff must allege that she was "selectively treated compared with other similarly situated employees, and that selective treatment was based on impermissible considerations . . . ." *Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010); *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). In Count III, Plaintiff asserts that being aware that she was an African-American female, the NYPD Defendants[15] deprived her of her constitutional rights by engaging in a pattern of discrimination. (Compl. ¶¶ 55-58.) Plaintiff alleges that "in acting to deprive plaintiff of her rights, [NYPD Defendants] failed to thoroughly investigate the shooting incident . . . ." (Compl. ¶ 56.) However poorly drafted, reading these allegations in a light most favorable to Walker, she has sufficiently pled an equal protection claim against the NYPD Defendants in Count III.

Nevertheless, Plaintiff's mere allegations of a discriminatory failure to conduct a proper investigation are not enough to overcome summary judgment on her claims against the NYPD Defendants. Despite having had years for discovery, Walker offers no evidence of an actual discriminatory investigation that would violate the Equal Protection clause. Although she points

_____

[15] "NYPD Defendants" refers to the remaining individual NYPD officers named in the action: Donovan and Wallace.

to numerous alleged investigative failures,[16] she cannot, and does not even try to, establish that other similarly situated individuals were treated differently than her. *See Levin v. Harleston*, 966 F.2d 85, (2d Cir. 1992) (affirming district court's grant of summary judgment dismissing a selective enforcement claim where the plaintiff could not establish that the defendant's failure to respond to the incidents at issue was any different than its failure to respond in similar circumstances); *Blount*, 2006 WL 3314635, at *14 (a showing that unrelated incidents were not identically handled to plaintiff's was not sufficient to raise an inference of discriminatory intent); *Walker v. Shepard*, 107 F. Supp. 2d 183, 187 (N.D.N.Y. 2000) (granting summary judgment against the plaintiffs in a selective enforcement claim where they could not offer proof that they were treated differently than other crime victims). Nor do the investigative shortcomings she alleges involve a significant deviation from police practice which would allow a jury to infer a discriminatory motive.[17] Wallace and Donovan interviewed witnesses, collected evidence, and

---

[16] Some of the alleged shortcomings of the investigation, among others, were: (1) failure to interview her before issuance of the August 6, 2002 report, (2) failure to square ambiguous and conflicting statements offered by Dietz, (3) failure to ask Dietz why he did not follow safety procedures, why the inspection of serial numbers required that the guns be removed from their holster, and which hand he observed Walker use to remove the firearm, (4) failure to resolve the issue of where the gun was located and pointed when it discharged or to take fingerprints off the gun, (5) failure to secure the weapon and holster for several hours, and (6) inclusion of numerous alleged false statements in Wallace's report.

[17] *Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) and *Civil Service Employees Ass'n, Inc. et al v. New York State Dep't of Parks, Recreation and Historic Preservation*, 689 F. Supp. 2d 267, 279 (N.D.N.Y. 2010), cited by Plaintiff, are distinguishable. In *Sassaman*, the plaintiff alleged Title VII discrimination. 566 F.3d 315. The Court noted that an employer's response to allegations of sexual harassment, specifically failing to properly investigate such allegations before taking adverse employment action, may support an inference of discrimination. *Id.* at 314-15. *Civil Service Employees Ass'n, Inc.* was similar, in that the plaintiff alleged a Title VII hostile work environment claim. 689 F. Supp. 2d 267. There, the Court considered the employer's failure to respond to complaints of sexual harassment as evidence that the employer

filled out the "form" report in accordance with their findings as was procedure.[18] (Bernstein Decl., Exh. 12 at 30-31.) That the investigation was not "perfect or to [Walker's] satisfaction" is not sufficient evidence alone to raise an inference of discriminatory intent. *Walker*, 107 F. Supp. 2d at 189.

Moreover, her claim that Defendants intentionally failed to use due diligence in investigating this incident to protect Dietz from liability—a completely unsupported allegation offered for the first time in her opposition to summary judgment, (Pl. Mem. at 5)—does not support her equal protection claim even if it were true. Just because Dietz is a white man and Walker is a black woman does not alone raise a reasonable inference that anything which allegedly was done to protect Dietz was done on the basis of Dietz's or Walker's race or gender, or even with malicious or bad faith intent to injure Walker. As Walker's ADR equal protection claim establishes, *infra*, a firearms discharge report finding that an officer was responsible for his or her own injury, even due to negligence and actions taken outside of department guidelines, did not prevent other officers from receiving ADR. Thus, it would not be reasonable to infer that the

_____

contributed to the creation and continuation of a hostile work environment. *Id.* at 279. Neither case allowed for a free-standing inference of discrimination from general allegations of deficient investigation into an incident, which on its face had no discriminatory underpinnings.

[18] Walker raises for the first time in opposition to the motion for summary judgment that her holster was intentionally or negligently destroyed by NYPD Defendants. (Pl. Mem. at 15-19.) She argues, therefore, that the spoliation of this "critical evidence" entitles her to an inference that examination of the holster would have supported her theory that she did not shoot herself and that Defendants engaged in a conspiracy to blame her for her injury. (*Id.*) Plaintiff cannot move for sanctions as part of her opposition to Defendants' motion for summary judgment. Additionally, as far as spoliation supporting a theory of conspiracy, all claims of conspiracy have been voluntarily withdrawn and so it is irrelevant for purposes of this motion. (Docket No. 43.)

investigating officers acted to discriminate against or intentionally injure Walker by concluding that she shot herself.

Walker offers no evidence from which a reasonable juror could infer that the investigation was conducted in a discriminatory manner or with a discriminatory purpose. I will note, however, that there were some disputed issues raised regarding the adequacy of the investigation. Issues of the inadequacy of investigation standing alone, without any proof of a violation of equal protection, cannot establish a Section 1983 claim. Given the complete lack of evidence of an equal protection violation based on discriminatory failure to investigate, Defendants' motion for summary judgment is granted as to Count III.[19]

## III.    Count IV Should Proceed Against Allocco

In Count IV, Walker asserts that Allocco, as Commissioner of the Board, deprived her of her constitutional rights by unfairly evaluating her ADR application and failing to perform or compel an adequate investigation based on her race, gender and disability. (Compl. ¶¶62- 63.) She further alleges that Allocco engaged in a pattern of discrimination. (Compl. ¶ 65.) Walker has thus plead an equal protection claim in Count IV. Moreover, I point out that despite the poorly drafted Complaint, Defendants have been on notice for quite some time that this was Walker's claim, as evidenced by their inclusion of the ADR comparators in the fact section of

---

[19] Having found that Defendants are entitled to summary judgment on this claim, there is no need to address their qualified immunity argument. *See Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007) ("If the facts ... do not establish a violation of a constitutional right, 'there is no necessity for further inquiries concerning qualified immunity,' and the officer is entitled to summary judgment.") (quoting *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)).

their memorandum in support of this motion for summary judgment. (Def. Mem. at 4.)

Defendants argue that even if Plaintiff properly plead such a claim, however, she cannot establish

that she was treated differently than any other similarly situated persons. (Def. Reply at 3, 8.)[20]

**A.     Genuine Dispute as to Material Fact Precludes Summary
Judgment on Walker's Equal Protection Claim**

To establish an equal protection violation, Plaintiff must prove: (1) that she "compared

with others similarly situated, was selectively treated; and (2) that such selective treatment was

based on impermissible considerations . . . ." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d

Cir. 2000). Equal protection claims based on differential treatment should be analyzed using the

same standards as Title VII discrimination claims based on differential treatment. *See Dawson v.*

*Bumble and Bumble*, 398 F.3d 211, 220 n. 1 (2d Cir. 2005) (noting that "a Section 1983 claim

arising from an employment discrimination dispute [is] subject to the same method of evaluation

as a Title VII claim").

First, whether individuals are "similarly situated" is generally a question of fact for the

jury to determine. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir.2001).

On summary judgment, then, it is for the court to consider only whether a reasonable juror could

infer that individuals were similarly situated. *Id.* (explaining that "a court can properly grant

---

[20] Defendants did not make this argument in their original summary judgment motion regarding the individual defendants, and ordinarily would not be permitted to raise it on reply. However, since I construed Plaintiff's pleading broadly, I will similarly construe Defendants' summary judgment arguments broadly. Defendants argued initially that with regard to City Defendant, Plaintiff could not establish that similarly situated individuals were treated differently to establish an equal protection claim. (Def. Mem. at 7.) Since the argument is the same with respect to her remaining equal protection claims, I will consider it as if it was raised in the initial moving papers.

summary judgment where it is clear that no reasonable jury could find the similarly situated

prong met"). Individuals are "similarly situated" when their circumstances are alike in all

material respects. *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60 (2d Cir. 1997).

Similarly situated does not mean identical, but rather "a reasonably close resemblance of the facts

and circumstances of plaintiff's and comparator's cases," *Graham v. Long Island R.R.*, 230 F.3d

34, 39 (2d Cir. 2000) (citing *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir.

1999)), to the extent that an "'objectively identifiable basis for comparability'" exists, *id.*

(quoting *Cherry v. American Tel. & Tel. Co.*, 47 F.3d 225, 229 (7th Cir. 1995)).[21]

As for the second prong, preferential treatment of members outside of the protected group

to which a plaintiff belongs may raise an inference of discriminatory intent. *See Montana v. First

Federal Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) ("To establish a

prima facie case of sex discrimination . . . , plaintiff was required to show that she was treated

less favorably than comparable male employees in circumstances from which a gender-based

motive could be inferred.").

_____

[21] Defendants cite *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 110 (2d Cir. 2006) as
support for their assertion that Plaintiff cannot establish differential treatment from similarly
situated individuals. In *Skehan*, the equal protection claim was based on a "class of one" theory
of discrimination and, as such required a higher showing of similarly situated individuals. *See
Neilson v. D'Angelis*, 409 F.3d 100, 104-106 (2d Cir. 2005) (explaining why the standard for
similarity in a "class of one" discrimination claim is different than a discrimination claim based
on membership in a protected class). Plaintiff does not allege a "class of one" theory of
discrimination, that is based on being treated differently for no rational reason. *Village of
Willowbrook v. Olech*, 528 U.S. 562, 565 (2000); *see also Engquist v. Oregon Dep't of Agric.*,
553 U.S. 591 (2008) ("class of one" equal protection claims are not cognizable against public
employers). Rather, she asserts a discrimination claim based on her membership in a protected
class—gender, race, or disability.

Defendants assert that Plaintiff cannot establish that she was similarly situated to the three male comparators[22] she offers to establish her equal protection claim. (Def. Reply at 3.) Although it is true that the circumstances surrounding the award of ADR vary from applicant to applicant, this does not mean that no two individuals who applied for ADR can be similarly situated in all material respects as Defendants argue. Rather, the Court should look to the circumstances of Walker's ADR claim and the ADR claims of the proffered comparators and determine whether a reasonable jury could conclude that they are similarly situated.

At a minimum, Comparator One's circumstances bear a reasonably close resemblance such that a reasonable juror could conclude that he was a similarly situated male who was treated differently than Walker. Comparator One—a Hispanic Male[23]—had what was identified as a self-inflicted gunshot wound to the hand, which according to the Medical Board's recommendation was the causal injury of his retirement. (Bernstein Decl., Exh. 21.) Similarly, Walker's self-inflicted gunshot to the hand was listed as the causal injury of her retirement. (Def. 56.1 Stmnt ¶ 2.) The Medical Board recommended both Comparator One and Walker for ADR. (Bernstein Decl., Exh. 21; Def. 56.1 Stmnt ¶ 2.) The final firearm discharge reports for both indicated that the injury was the result of negligence on the part of the injured officer, whose actions were outside department guidelines. (Bernstein Decl., Exhs. 5 and 21.) Yet, Comparator

---

[22] These were apparently the only other ADR applicants who were injured as the result of an accidental firearms discharge. (Def. Mem. at 4.).

[23] Defendants identify this comparator as a white male, (*see* Declaration of Phyllis Calistro in Support of Defendants' Summary Judgment Motion, dated Jan. 20, 2010, ¶ 5); Plaintiff identifies him as a Hispanic male, (*see* Pl. Mem. at 9). It appears from the documentation submitted by Plaintiff that Comparator One is indeed a Hispanic male. (Bernstein Decl., Exh. 21.)

One received ADR and Walker did not—a decision that was apparently predicated on Walker's fault being identified as the cause of her injury. Comparator One was apparently not similarly penalized for his negligence (failing to use a firearms safety station to load and unload his weapon and not following protocol for assembling, disassembling, and cleaning his weapon).

Defendants argue that this comparator's circumstances are distinguishable because his initial injury did not prevent him from continuing full police duty until a second injury (his handcuffs hit him in the injured hand) aggravated the earlier injury preventing him from continuing as a police officer. The Court was not provided with a full colloquy of the Board's discussions (if any took place) before voting to award ADR to Comparator One, so it is unclear whether the second injury weighed heavily in the Board's decision. However, it is clear that the Medical Board recommendation for ADR (contrary to the Police Commissioner's recommendation for ODR) identified the initial self-inflicted gunshot wound as the causal injury for Comparator One's retirement. Therefore, since the causal injury of both Walker and Comparator One were identified as self-inflicted gunshot wounds to the hand, which occurred as a result of the officers' own negligence, I am satisfied that the material circumstances are sufficiently similar to allow the question to reach a jury.

Comparator Two's case is also sufficiently similar to Walker's such that a reasonable jury might conclude that they were similarly situated. The firearm discharge report for Comparator Two—an African-American male—similarly indicated that his self-inflicted gunshot wound (to his knee) occurred as a result of his own negligence and outside of department guidelines (failing to properly secure a weapon). (Bernstein Decl., Exh. 22.) Like Walker, the Medical Board

recommended he be awarded ADR, but in his case, the Board awarded it to him. (Bernstein Decl., Exh. 22.) Again, the Court was not provided a copy of the Board's colloquy before voting to approve Comparator Two's ADR benefits; however, as with Comparator One, I am satisfied that the attending circumstances are sufficiently similar to submit the question to the jury.

On the basis of these two comparators, Walker has raised a genuine issue of material fact as to whether she was treated differently than similarly situated male officers in the Board' denial of ADR. In both comparator cases, the final firearm discharge report, which Allocco explained is relied upon by the Board, (Bernstein Decl., Exh. 20 at 37), indicated negligence on the part of the male officers in bringing about the self-inflicted gunshot wounds, but these officers were awarded ADR. Moreover, the Board's rejection of the Medical Board recommendation in Walker's case, without explanation and contrary to what was apparently done in the two male officers' cases, also raises a reasonable inference that she was treated differently than those similarly situated.

Finally, the Board ignored obvious incongruities in the final report upon which they relied to deny her ADR. As Officer Alejandro explained at the meeting, and as Medina explained in his affidavit, it is highly unlikely that an officer would shoot herself in her dominant hand while unholstering a weapon. (Bernstein Decl., Exh. 23 at 10, 16; Medina Aff. at 3.) The report itself failed to resolve this discrepancy. The Board's reliance on a report that contained obvious incongruities, coupled with its decision to ignore the Medical Board's recommendation to grant ADR and differential treatment of negligent, male officers, raises a reasonable inference that her ADR application was treated differently on the impermissible basis of Walker's gender. Since

on summary judgment all reasonable inferences are to be made in the non-moving party's favor, I find that a genuine dispute as to a material fact exists regarding whether Walker was treated differently than similarly situated male officers.

I do find, however, that the circumstances surrounding the denial of ADR to Comparator Three—a white male—are not sufficiently similar. Comparator Three was denied both ADR and ODR on the basis of the Medical Board's determination that his injuries did not prevent him from continuing full police duty. (Bernstein Decl., Exh. 24.) In this significant respect, Walker's circumstances are different than Comparator Three. In opposition to summary judgment, Plaintiff asserts that she was not given the opportunity to continue as a police officer, (Pl. Mem. at 10); however, the Medical Board determined that she could not continue in her full police duties contrary to its findings with Comparator Three. Given that she alleges no differential treatment by the Medical Board in rendering its recommendations, no reasonable jury could conclude that Comparator Three and Walker were similarly situated in all material respects.

I also find that Walker cannot establish selective treatment on the basis of her race or disability. Of the three comparators she offers, all are male, but they are of varying races and disabilities—one white with an injury to his thigh, one African-American with an injury to his knee, one Hispanic with an injury to his hand. With so few ADR awards for accidental firearms discharges in the relevant time period, it is telling that at least one of the awards was to an African-American male, undercutting her racial discrimination claim, and one was to a male with similar injuries, undercutting her disability discrimination claim. The only rational inference from these comparators is that ADR awards were made without regard to race and without regard

to the alleged disability.  Suffice it to say, then, that her claims for disability and race discrimination do not survive summary judgment since a rational jury could not conclude that membership in either protected group led to differential treatment.   As such, the only discrimination claim that survives summary judgment is for selective treatment on the basis of gender.[24]

## B.      Allocco's Qualified Immunity Defense

Government officials are entitled to immunity from suit when acting in their discretionary functions unless the official "*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (emphasis in original).  Moreover, the plaintiff must establish that the rights violated were "clearly established," meaning that a "reasonable" official would have understood "that what he [did] violate[d] that right."  *Anderson v. Creight*, 483 U.S. 635, 640 (1987).  Therefore, if the official's actions were objectively reasonable, that is it was reasonable to believe the act did not violate a right of the plaintiff, he is still entitled to qualified immunity regardless of whether the plaintiff's rights were actually violated.  *Johnson v. Ganim*, 342 F.3d 105, 116 (2d Cir. 2003)

Although "the qualified immunity inquiry is generally an objective one, a defendant's subjective intent is indeed relevant in motive-based constitutional [violations] . . . . Otherwise, defendants in such cases would always be immunized from liability so long as they could point to

---

[24]  Moreover, even construing her allegations broadly, she did not allege an equal protection violation based on disability discrimination in her Complaint.  Therefore, I will not address the issue of whether a disability discrimination claim may be asserted in a Section 1983 action in lieu of a claim under the Americans with Disabilities Act.

objective evidence showing that a reasonable official could have acted on legitimate grounds."

*Johnson v. Ganim*, 342 F.3d at 117.  Therefore, if there remains a genuine issue of fact regarding the defendant's specific intent, summary judgment on qualified immunity grounds must be denied.  *Id.*; *Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003).

Defendants argue first that Allocco is entitled to qualified immunity because he did not violate a protected right, (Def. Mem. at 8), and second that it was objectively reasonable for him to believe that his actions did not violate any of Walker's clearly established rights, (Def. Reply at 10).  Because there are genuine issues of fact regarding Walker's differential treatment in the denial of her ADR claim, Defendants' first argument fails.  It is for a jury to determine whether Walker was subjected to differential treatment based on her gender.

Defendants argue that Allocco's actions were objectively reasonable because the facts warranted a denial of Walker's ADR claim, and because five other Board Members voted against the ADR award.  (Reply Mem. at 5-6.)  The mere fact that five other board members voted the same way does not itself negate the specific intent element of an equal protection violation.  Moreover, Defendants offer no argument or explanation beyond pointing the Court to its statement of facts in their motion papers that Allocco's actions were objectively reasonable.  Such a conclusory, blanket assertion is not enough to establish that Allocco's actions were objectively reasonable.  In addition, having found that a jury could properly infer that Walker was treated differently on the basis on gender, there is simply no view of treating a female officer differently that would be objectively reasonable in this context.

## CONCLUSION

Based on all of the foregoing, Defendants motion for summary judgment is granted in part and denied in part. All federal claims against the City and the NYPD Defendants are DISMISSED. Allocco's motion for summary judgment is GRANTED with respect to Walker's race and disability discrimination claims, but DENIED with respect to her gender discrimination claim.

The parties are directed to submit a joint pretrial order, proposed voir dire, requests to charge, and any in limine motions (fully briefed) or pretrial memoranda of law no later than February 25, 2011. The trial will commence on March 28, 2011 at 9:30 a.m. in Courtroom N2E.

**SO ORDERED.**

Dated: December 15, 2010
        Brooklyn, New York

                                        *Ramon E. Reyes Jr.*
                                        **Ramon E. Reyes, Jr.**
                                        **United States Magistrate Judge**